# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:13 CR 00486 |
| | ) | |
| Plaintiff, | ) | JUDGE NUGENT |
| | ) | |
| -vs- | ) | |
| | ) | |
| CURTIS HENDERSON, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

### I. Introduction

Defendant, Curtis Henderson submits the foregoing brief in connection with his April 25, 2014 sentencing hearing.  As detailed herein, Henderson respectfully objects the Probation Department's finding that Henderson's base offense level is 20 based on a finding that he possessed a "high capacity magazine."  Rather, Henderson requests the Court find his base offense level to be **15**.

Also, Henderson submits that the Court should consider varying from the Sentencing Guidelines sentence him to a prison term of 21 to 27 months given the presence of mitigating circumstances.  At the very least, the Court should vary from the Guidelines by sentencing Henderson as an individual falling within Criminal History Category V, instead of VI.

### II. Relevant Procedural History

Henderson was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  The firearm at issue is a Sig Sauer Model P226 9 mm semi-

automatic pistol.    The weapon was loaded with a magazine containing fifteen (15) rounds of ammunition. According to  on-line literature about this particular model, Sig Sauer manufactures magazines with capacities of 15, 17 and 20 rounds.  Sig Sauer does not manufacture 16-round magazines.  At the first scheduled sentencing hearing, counsel for parties examined the weapon with ATF Agent Kimani Howell, and both agreed that the magazine at issue is a 15-round magazine that, for reasons unintended by the manufacturer, can hold a sixteenth round.  Parties agree that the magazine cannot hold a seventeenth round.

Based on this anomaly, the Probation Department set Henderson's base offense level at 20, as opposed to 14, on the theory that he had possessed a "large capacity magazine" – i.e., a magazine than can accept more than 15 rounds of ammunition. (PSR ¶ 16, relying on USSG § 2K2.1(a)(4)(B)(i)(I))

Here, Henderson never has fired the weapon at issue and is not accused of doing so.  From on-line research, it appears that it is occasionally possible, due to "differing spring tolerances," to force a sixteenth round into a fifteen-round magazine, thereby *making* the magazine into a "large capacity magazine" through no fault of its owner. There is no evidence to suggest that Henderson altered the magazine to hold an additional round or that he could have done so had he tried.

### III. Points of Authority

**Calculation of Defendant's Base Offense Level.**  Per U.S.S.G. § 2D1.1(c)(12), Henderson's base offense level *without the 6-point "large capacity magazine" enhancement* is <u>14</u>.   He also is subject to a 4-level enhancement under USSG § 2K2(b)(6)(A), due to the fact that he possessed the gun in connection with drug-

2

trafficking activities.  Henderson is, however, eligible for a 3-level reduction pursuant to § 3E1.1(a) for "acceptance of responsibility," thereby reducing his  adjusted offense level to **15**.    Further, Henderson also has more than 12 criminal history points, which corresponds to Criminal History Category VI. *See* USSG Sentencing Table Chapter 5.

The guideline range of imprisonment for a defendant with a total offense level of 15 in a Criminal History Category VI is 41 to 51 months.  If the Court were to apply the "large capacity magazine" enhancement, the guideline range would jump to 77 to 96 months – nearly double the time.

**Objection to "Large Capacity Magazine" Enhancement.**  Henderson objects to this 6-point enhancement and asks the Court to apply a downward variance from the guidelines.  (The Government has filed its own objection to the same enhancement.)  From all appearances, this is an anomalous case of a pistol's magazine that can house one more round than it was manufactured to hold.  This, therefore, is a rare case where the Court can justifiably disregard the Guidelines "large capacity magazine" enhancement because this atypical situation falls outside of the "heartland" which the Sentencing Commission intends the individual Guidelines to apply. *See Rita v. United States*, 127 S. Ct. 2456 (2007).   To double Henderson's time in prison based on this unusual and unexpected situation would promote derision, not respect for, the law because it would constitute unduly "harsh punishment without taking into account the real conduct and circumstances involved . . . ." *See United States v. Stern*, 590 F. Supp. 2d 945, slip op. at 18 (N.D. Ohio Dec. 19, 2008) (filed).

A downward variance/non-guideline sentence is justified where, as here, the offense conduct did not reflect the behavior that the statutes and guidelines are generally

targeted. *See United States v. Lupton*, 2009 WL 1886007 (E.D. Wisc. June 29, 2009). Judges within this district have sentenced offenders to terms dramatically far below guideline ranges in atypical situations like those present in Henderson's case. *See, e.g., Stern, supra* (sentencing child porn defendant to prison term of 12 months and a day, instead of 46-57 month guideline; adolescent age at which the defendant began to view photos of subjects his own age distinguished him from the average child porn offender).

Further, from a tax-payer's standpoint, it would be absurd to double Henderson's prison term because of this sixteenth bullet. *See United States v. Hughes*, 825 F. Supp. 866 (D. Minn. 1993) (finding that the non-rehabilitative purposes of incarceration will be better served by a far shorter sentence; noting how "[b]oth society and the defendant will pay a dear cost for [a longer] sentence and receive very little in return"). Presently, the annual cost of incarcerating the average federal prisoner is presently about $30,000, a cost that will continue to grow over time. If Henderson's base offense level is arbitrarily elevated from 14 to 20 because a sixteenth bullet can be wedged into this fifteen round magazine, the government will have to expend another $100,000 or so on Henderson's incarceration.

**Request for Downward Variance.** Should the Court agree with parties' joint objection to the 6-point enhancement, Henderson further requests that the Court vary from the guidelines and impose a prison term of less than 36 months. But for Henderson's criminal history and the 4-point § 2K2.1(b)(6)(A) enhancement,[1] Henderson

---

1 Even though Henderson's possession of the firearm had the incidental effect of making his small-time drug stash more secure, thus leading to the 4-level enhancement under USSG § 2K2(b)(6)(A), he mainly owned the gun due to his fear of violence that comes from living in a crime-ridden neighborhood.

would only be facing a prison term of approximately 8 to 14 months.  Instead, he is facing almost quadruple that time behind bars.

**1.      Henderson's firearm was intended for self -defense purposes.**

A downward variance is appropriate because Henderson has mitigating reasons for possessing a firearm.  Henderson's south Cleveland neighborhood is part of what area law enforcement refers to as a "red zone" due to high levels of street violence.  Burglary, robbery, and homicides are far higher than average in this part of the city. In 2008, Henderson was threatened at gun-point by area drug dealers, presumably because Henderson called 9-1-1 after witnessing another area shooting at East 93 Street and Miles Avenue.  In 2010, an inmate with whom Henderson was imprisoned who happened to have resided a few streets away from Henderson's home threatened to kill him upon his release from prison.  Between 2011 and 2012, numerous houses along Henderson's street were burglarized, and one family was the victim of a home invasion-style robbery at gun-point.  Only a few weeks ago, a male was shot in the street next door to Henderson, and a stray bullet went through one of Henderson's home.  On an added note, the guns were found in his upstairs bedroom where he slept, not downstairs where drugs and drug trafficking evidence were discovered.  He also is not accused of carrying the gun(s) and drugs simultaneously.

A request for a variance is consistent with the Sixth Circuit's view that the "used in connection with" enhancement does not apply unless it "reasonably appears that the firearms found on the premises . . . are to be used to protect the drugs or otherwise facilitate a drug transaction." *United States v. Hardin*, 248 U.S. 489, 498 (6th Cir. 2001). The Sixth Circuit has taken the position that possession of firearms that is merely

*coincidental* to the underlying felony offense is insufficient to support the application of § 2K2.1. *See United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001).  The mere fact "that narcotics and firearms were present in the same residence, or even in the same room," does not necessarily support the § 2K2.1 enhancement. *United States v. Hardin,* 248 F.3d 489, 495-96 (6th Cir. 2001).

Unfortunately for Henderson, there was substantial evidence of drug trafficking at his Pratt Avenue that would justify the 4-level enhancement on the "fortress theory" of possession, i.e., that the firearm(s) found at the scene emboldened his drug trafficking activities.  On the other, there is evidence that Henderson owned a gun for self-defense purposes due to the high levels of crime in his neighborhood.   Under the circumstances, the Court could reasonably sentence Henderson to a prison term in the 21-27 range as though the 4-level enhancement did not apply.

### 2.      The PSR overstates Henderson's criminal history.

A downward variance also is appropriate in this case because Henderson's high criminal history category over-represents the seriousness of his past criminal conduct. *See United States v. Mishoe*, 241 F.3d 214 (2d Cir. 2001) (horizontal departure in criminal history category may be warranted where prior sentences for past crimes were particularly lenient).  Here, despite Henderson's high number of criminal history points, he received little to no jail time on about half of those convictions, and many were for low misdemeanors or minor misdemeanors.  For a number of those misdemeanor cases, Henderson either received a suspended sentence or he did not spend a substantial amount of time in jail.

A departure of at least one criminal history category is justifiable in this case

because approximately four (4) criminal history points assessed against him were for a minor misdemeanor disorderly conduct conviction, an M-4 underage drinking conviction, and marijuana possession.[2]

*Two (2) criminal history points.*  In Cleveland Muni. Case No. 2013-CRB-029788, the trial court convicted Henderson of MM-disorderly conduct the day after he was arrested and fined him $150, but mistakenly credited him for 75 days in jail even though he was released that very day. (*See* PSR, ¶ 46, p.  12)

*One (1) criminal history point.*  In Cleveland Muni. Case No. 2004-CRB-008578, the trial court convicted Henderson of M-4 possession of alcohol by a minor in violation of the Cleveland Codified Ordinances. (*See* PSR, ¶ 33, p.  8)  In that case, Henderson did what most young, unrepresented defendants do when charged with underage drinking in the Cleveland Municipal Court: instead, of plea bargaining to a minor misdemeanor (e.g., disorderly conduct or MM-underage drinking in violation of Ohio *state* law), he pleaded to M-4 underage drinking.  The PSR states that Henderson received a suspended sentence in that case, but the trial court's docket shows that no sentence was actually imposed. Further, underage drinking is a status offense, i.e., a crime that penalizes someone for engaging in activity at too young an age, as opposed to committing  crime of violence or moral turpitude.

*One (1) criminal history point.*  Finally, in Cleveland Muni. Case No. 2003-CRB-031165, Henderson pleaded guilty/no contest to marijuana possession (less than 100 grams). (*See* PSR, ¶ 30, p.  7)  Here again, Henderson foolishly pleaded to M-4 marijuana

---

2  At sentencing, Henderson's counsel will supply the Court with certified copies of the dockets in all three cases and any relevant journal entries.

possession as opposed to seeking a reduction by plea bargaining to either MM-disorderly conduct or MM-marijuana possession in violation of Ohio *state* law). The trial court merely fined him $75. Even though the PSR states that Henderson received a suspended sentence, the trial court's docket shows that it technically never imposed a jail sentence but merely stated in an entry that he receive credit for 5 days time served.

Moreover, Henderson complied with all the conditions of pretrial release and has fully cooperated with the U.S. Probation Department in the preparation of the PSR. There has been no hint of a problem or any indication that he is associating with criminals or engaging in criminal activity any longer. He has shown by his stellar conduct over the past two months that he will comply with the directives of the Court and the Pretrial Services and Probation Departments. Henderson thus is willing and capable of complying with whatever terms and conditions of probation that this Court was to impose on him, and resume a law-abiding lifestyle. Since the Court granted him pretrial release this past March, he has been attending GED classes through Cuyahoga Community College at the offices of the U.S. Probation Department, and expects to be ready to take the GED exam within 2 to 3 months. Finally, the Court should note that the offense for which Henderson was convicted did not involve *any* violence or threat of violence nor caused serious harm to any particular person or property.

The circumstances outlined above suggest that a variance from the Sentencing Guidelines is appropriate in Henderson's case because of his lawful motivation to carry a firearm, and the fact that the PSR somewhat overstates his criminal history.

**Supervised Release.** To the extent the Court deems it necessary to impose a period of supervised release, Henderson asks that the Court limit the term to three years.

*See* U.S.S.G. § 5D1.2(a)(2).

**Request for Waiver of Fine.**  As to any fine, Henderson asks the Court to waive any fine that it might otherwise impose on someone convicted of a crime at his total offense level. *See* U.S.S.G. § 5E1.2 (authorizing the trial court to waive fine if it finds that the defendant is unable to pay the fine and is unlikely to be able to pay the fine in the foreseeable future).  Here, Henderson is indigent and presently unemployed.  He only earned approximately $500 a month from this criminal enterprise that led to the search of his property.  In fact, he is even behind in his payments to defense counsel.  Upon release, Henderson will encounter substantial difficulty obtaining gainful employment due to his felony convictions.  Accordingly, the Court has complete discretion to waive a fine in this instance.

**Prison Assignment and Time to Report.**  Henderson asks the Court to recommend to the Bureau of Prisons that he serve his sentence at the Federal Correctional Institution in Morgantown, West Virginia.  Henderson has only been convicted of non-violent felonies, and FCI Morgantown is a minimum-security facility.  Also, that prison is in close proximity to Cleveland, thereby making it easier for his family to visit him during his incarceration.

Finally, Henderson respectfully requests that the Court permit him to "self-report" to prison within the next thirty (30) days.  He still is in the process of moving his uncle into his Pratt Avenue house to serve as a caretaker for the property.  Since Henderson has been compliant with the Pretrial Services Department's terms and conditions for the past six (6) months, he can be trusted to appear at the institution on his own on whatever date the Court orders.

### IV.  Conclusion

WHEREFORE, Defendant Henderson respectfully submits that the base offense level in this case is 14, not 20, that the Court should vary from the Sentencing Guidelines and treat him as someone who falls within a Criminal History Category V and, in any event, that a prison term of 21 to 27 months is appropriate in this case even though it would require the Court to vary from under the Guidelines.  Whatever sentence the Court deems appropriate, Henderson asks that the Court give him full credit for time served.

Lastly, Henderson asks the Court to sentence him to the statutory minimum period of supervised release, waive any fines and costs on the grounds of indigency, recommend to the prison bureau that he serve his term at FCI Morgantown, and that he be given time to self-report.

Respectfully submitted,

**/s/ Eric Norton**

Eric Norton (0071563)
12434 Cedar Rd.
Cedar-Grandview Building, Ste. 6
Cleveland, Ohio 44106
Ph.: 216.791.0000
E-mail: nortonlawfirm@yahoo.com

Counsel to Defendant

10

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Request for Discovery has been served upon the Assistant United States Attorney via electronic filing on **April 23, 2014**.

**/s/ Eric Norton**

_____
Eric Norton (0071563)
Counsel for Defendant